[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Sheckles*, Slip Opinion No. 2024-Ohio-3339.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-3339

THE STATE OF OHIO, APPELLANT, *v.* SHECKLES, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Sheckles*, Slip Opinion No. 2024-Ohio-3339.]**

*Criminal law—*Touhy *regulations do not create rights for criminal defendants, and a violation of such regulations is not generally a basis for a criminal defendant to request an exclusionary remedy—*Touhy *regulations are not rules of procedural admissibility to be wielded by a criminal defendant to exclude testimony of a current or former federal employee—Court of appeals' judgment reversed and cause remanded to trial court.*

(No. 2023-0294—Submitted November 14, 2023—Decided September 6, 2024.)

APPEAL from the Court of Appeals for Hamilton County,

Nos. C-220255 and C-220256, 2023-Ohio-133.

_____

BRUNNER, J., authored the opinion of the court, which KENNEDY, C.J., and FISCHER, DEWINE, DONNELLY, and EKLUND, JJ., joined.  STEWART, J., dissented,

with an opinion. JOHN J. EKLUND, J., of the Eleventh District Court of Appeals, sat for DETERS, J.

**BRUNNER, J.**

## I. INTRODUCTION

{¶ 1} At the outset of a criminal trial related to an alleged shooting at a bar, the prosecution and the defense presented arguments about the admission of testimony from a former federal prosecutor and the admission of an edited video of the alleged shooting compiled from footage obtained from the bar's security cameras. The trial court ruled that both would be excluded from evidence at trial. It found that appellant, the State of Ohio, had not shown that the former federal prosecutor had permission to testify under the United States Department of Justice's *Touhy* regulations,[1] and it found that the bar owner could not authenticate the video, because she did not prepare the video from the raw footage. Instead of seeking final rulings on these evidentiary issues at trial, the State certified that the trial court's rulings had rendered the State's proof with respect to the pending charges so weak in its entirety that any reasonable possibility of an effective prosecution had been destroyed, and the State appealed both of the trial court's evidentiary rulings under Crim.R. 12(K). The First District Court of Appeals affirmed the judgments of the trial court.

{¶ 2} The State appealed to this court, but its propositions of law do not challenge the merits of the trial court's ruling on the video-authentication issue. Instead, the questions before this court are whether the *Touhy* regulations should

---

1. In accordance with *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), "agencies of the United States government may draft procedural rules and regulations that govern requests for information and the agency's determination of whether it will release the information." *State v. Hudson*, 2009-Ohio-6454, ¶ 26 (8th Dist.). These regulations are often referred to as *Touhy* regulations. *See Agility Pub. Warehouse Co. K.S.C.P. v. United States Dept. of Defense*, 246 F.Supp.3d 34, 41 (D.D.C. 2017).

have been relied on by the trial court to prevent the former federal prosecutor from testifying and whether the trial court's pretrial evidentiary rulings should have been deemed preliminary rather than final.

{¶ 3} We hold that *Touhy* regulations do not create rights for criminal defendants and that a violation of such regulations is not generally a basis for a criminal defendant to request an exclusionary remedy. The regulations are not rules of procedural admissibility or a sword that may be wielded by a criminal defendant to seek the exclusion of testimony of a current or former federal employee, who in this case was apparently willing to testify and had the authorization to do so. The judgment of the First District on this question is therefore reversed.

{¶ 4} We further find no basis for addressing the State's proposition of law regarding the finality of the trial court's pretrial evidentiary rulings. We therefore reverse the First District's judgment with respect to the State's first and second propositions of law, vacate its judgment with respect to the State's third proposition of law, and we remand this case to the trial court for further proceedings consistent with the law and this opinion.

## II. FACTS AND PROCEDURAL HISTORY

{¶ 5} In January 2020, appellee, Sontez Sheckles, was indicted in the Hamilton County Common Pleas Court for attempted murder, felonious assault, and having a weapon while under a disability. The charges stemmed from an alleged shooting that occurred at Chalet Bar in Cincinnati on November 29, 2019. After Sheckles requested discovery, the prosecution largely declined to disclose the names and addresses of its witnesses based on its belief that disclosure would compromise the safety of the witnesses or subject them to intimidation or coercion. However, one witness the prosecution did disclose to Sheckles in April 2022 was a former federal prosecutor, Zachary Kessler. It appears that Kessler had prosecuted a federal case against Sheckles on an offense seemingly related to the Hamilton

County charges at issue in this case. The federal case apparently resulted in Sheckles agreeing to plead guilty to a federal offense.

**{¶ 6}** The Hamilton County case was set for trial on May 12, 2022, but the trial court granted a continuance because the State lacked a witness who could authenticate a video of the alleged shooting that had been compiled from raw footage obtained from the bar's security cameras. The trial court warned that the failure to have a witness present to authenticate the video at the next trial date would result in the video being excluded from evidence at trial.

**{¶ 7}** Trial was rescheduled to begin on May 25, 2022. However, two issues arose that morning. First, the State had subpoenaed Kessler but had not obtained a *Touhy* letter that would permit him to testify. The trial court gave the State some time to obtain the letter and moved on to consider the second issue— identifying the witness who would authenticate the video of the alleged incident. The State sought to have the bar owner authenticate the video, but the defense objected, pointing out that the video had been edited by the police, not the bar owner. Later that day, the trial court returned to consideration of the missing *Touhy* letter, noted that ample opportunity had been given to the State to obtain the letter, and excluded Kessler from testifying. The State indicated that it intended to appeal that decision.

**{¶ 8}** The trial court returned to consideration of the video-authentication issue. The State called the bar owner to testify and authenticate the video. But the trial court excluded the video after determining that the bar owner could not authenticate it, because she had not compiled the video from the raw security-camera footage. Prior to the trial court's ruling, the State offered to have the police officer who compiled the video attest to its authenticity and told the court that she could be there in about 30 minutes. The trial court, however, chose to rule on the issue without waiting for the additional witness.

**{¶ 9}** On June 2, 2022, the State appealed both of the trial court's evidentiary rulings under Crim.R. 12(K), claiming that the rulings had rendered the State's proof with respect to the pending charges so weak in its entirety that any reasonable possibility of an effective prosecution had been destroyed. The First District consolidated both appeals and affirmed the trial court's rulings. 2023-Ohio-133 (1st Dist.). The First District found that the trial court was not presented with a *Touhy* letter, that the Code of Federal Regulations indicates that a former employee of the Department of Justice may testify only with such a preauthorization, and that the State had not advanced any legal basis before the trial court in support of its assertion that Kessler could testify without a *Touhy* letter. 2023-Ohio-133 at ¶ 23-31 (1st Dist.). Regarding the video-authentication issue, the First District found that the video could have been authenticated by someone who personally witnessed the events depicted therein or who was familiar with the reliability of the process or system that produced the edited video, but the State had presented neither. *Id.* at ¶ 34-39.

**{¶ 10}** The State appealed to this court, and we accepted jurisdiction to review three propositions of law, none of which challenges the merits of the First District's judgment on the video-authentication issue:

> [1.] The burden of showing testimony ought to be excluded under a claimed privilege that a former federal employee cannot testify under federal regulations is on the party seeking to exclude the former federal employee's testimony.
>
> [2.] Federal regulations generally prohibit employees and former employees of the Department of Justice from testifying when the United States is not a party. However, such regulations do not mandate that the employee produce written authorization by the Department to defense counsel or the trial court.

[3.] A trial court should not definitively exclude evidence at a pretrial motion in limine. A motion in limine is tentative and precautionary in nature and should reflect the court's anticipated, not definitive ruling, of an evidentiary issue at trial.

*See* 2023-Ohio-1734.

## III. DISCUSSION

### A. Whether Kessler Should Have Been Prevented from Testifying

{¶ 11} In *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 467-468 (1951), the United States Supreme Court held that an employee of the United States Department of Justice correctly refused to produce subpoenaed records when doing so would have violated a regulation that the United States Attorney General had issued under statutory authorization. This holding is part of the foundation for the practice of federal agencies to enact regulations for responding to subpoenas and requests for documents. As noted above, these regulations are often referred to as *Touhy* regulations. *See Agility Pub. Warehouse Co. K.S.C.P. v. United States Dept. of Defense*, 246 F.Supp.3d 34, 41 (D.D.C. 2017), citing 5 U.S.C. 301; *see also State v. Hudson*, 2009-Ohio-6454, ¶ 26 (8th Dist.). Relevant to this case, one of the current *Touhy* regulations of the United States Department of Justice provides:

(a) In any federal or state case or matter in which the United States is not a party, no employee or former employee of the Department of Justice shall, in response to a demand, produce any material contained in the files of the Department, or disclose any information relating to or based upon material contained in the files of the Department, or disclose any information or produce any material acquired as part of the performance of that person's official duties or because of that person's official status without prior

approval of the proper Department official in accordance with §§ 16.24 and 16.25 of this part.

(b) Whenever a demand is made upon an employee or former employee as described in paragraph (a) of this section, the employee shall immediately notify the U.S. Attorney for the district where the issuing authority is located. The responsible United States Attorney shall follow procedures set forth in § 16.24 of this part.

28 C.F.R. 16.22(a) and (b). The provisions of 28 C.F.R. 16.24 provide for a chain of command in deciding whether to honor the subpoena or request and refer the decision-maker to 28 C.F.R. 16.26, which sets forth the considerations in determining whether production or disclosure should be made in response to a demand. In short, these regulations set forth a general prohibition and then the grounds on which the Department of Justice may permit one of its current or former employees to testify or produce records.

{¶ 12} The "[p]urpose and scope" provision of the Department of Justice's *Touhy* regulations specify that they apply even in state proceedings. 28 C.F.R. 16.21(a).

{¶ 13} The regulations also clarify that they do not create any enforcement rights:

(d) This subpart is intended only to provide guidance for the internal operations of the Department of Justice, and is not intended to, and does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by a party against the United States.

28 C.F.R. 16.21(d).

**{¶ 14}** The Department of Justice's *Touhy* regulations that are set forth in 28 C.F.R. 16.21 et seq. are designed to safeguard the information of that department and provide a process and command structure to organize, when appropriate, the release of requested information. The regulations do not govern evidentiary procedural admissibility such that a litigant may seek the exclusion of testimony from a federal employee who is willing to testify. Decisions by courts addressing federal employees' refusing to testify or provide records have been upheld, *see, e.g.*, *Cabral v. United States Dept. of Justice*, 587 F.3d 13, 23-24 (1st Cir. 2009), and reversed, *see, e.g.*, *United States v. Ritchie*, 734 Fed.Appx. 876, 878-879 (4th Cir. 2018). But we find no legal support for a judge to rely on *Touhy* in order to forbid a federal employee, who is willing to testify, from testifying. Moreover, the Department of Justice's *Touhy* regulations make clear that a criminal defendant has no right to rely on *Touhy* in order to object to the admission of evidence; instead, a federal employee holds the right to refuse to testify or produce records until he or she has been given permission to do so.

**{¶ 15}** Even if the *Touhy* regulations were enforceable by criminal defendants, violations of statutes or rules are not generally grounds for applying the exclusionary rule. *See Kettering v. Hollen*, 64 Ohio St.2d 232, 234-235 (1980) ("The exclusionary rule has been applied by this court to violations of a constitutional nature only."), citing *State v. Myers*, 26 Ohio St.2d 190, 196 (1971), *State v. Downs*, 51 Ohio St.2d 47, 63-64 (1977), *vacated on other grounds sub nom. Downs v. Ohio*, 438 U.S. 909 (1978), and *State v. Davis*, 56 Ohio St.2d 51 (1978); *see also State v. Brown*, 2003-Ohio-3931, ¶ 22-25 (evidence seized in search incident to arrest suppressed because arrest was for a minor misdemeanor when none of the R.C. 2935.26 exceptions were applicable and thus the arrest violated the Ohio Constitution).

**{¶ 16}** Sheckles's case is atypical. The State, not Sheckles, is the party seeking testimony or records from Kessler. And Sheckles's reliance on the

Department of Justice's *Touhy* regulations to support excluding Kessler's testimony does not measure up, because it appears that Kessler was willing to testify and had the authorization to do so. Sheckles held no rights under *Touhy* that could be asserted in support of his request to exclude Kessler's testimony. The trial court should not have excluded Kessler's testimony on that basis.[2] The judgment of the First District on the *Touhy* issue is therefore reversed.

### B. Whether Rulings Were Preliminary

{¶ 17} Within the context of the trial court's evidentiary rulings on the *Touhy* issue and the video-authentication issue, the State argues that the trial court erred in definitively excluding Kessler's testimony and the video—rather than entering preliminary rulings that could be revisited during trial.

{¶ 18} It is true that generally, "an order denying a motion in limine is a preliminary ruling about an evidentiary issue that is anticipated, and the issue is preserved only by a timely objection when the issue is actually reached during the trial." *State v. Brunson*, 2022-Ohio-4299, ¶ 25, citing *State v. Grubb*, 28 Ohio St.3d 199, 203 (1986). In this case, however, the State viewed the trial court's evidentiary ruling as definitive and appealed the ruling under Crim.R. 12(K).[3]

---

2. Discovery sanctions, however, may include excluding evidence under Crim.R. 16(L)(1).

3. That rule provides:

> When the state takes an appeal as provided by law from an order suppressing or excluding evidence . . . , the prosecuting attorney shall certify that both of the following apply:
> (1) the appeal is not taken for the purpose of delay;
> (2) the ruling on the motion or motions has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed . . . .
> The appeal from an order suppressing or excluding evidence shall not be allowed unless the notice of appeal and the certification by the prosecuting attorney are filed with the clerk of the trial court within seven days after the date of the entry of the judgment or order granting the motion. Any appeal taken under this rule shall be prosecuted diligently.
> If the defendant previously has not been released, the defendant shall, except in capital cases, be released from custody on the defendant's own

**{¶ 19}** Our resolution of the first two propositions of law renders it unnecessary for us to reach the third proposition. Our decision about the *Touhy* issue necessarily means that proceedings will resume in the trial court. There is no barrier on remand to the State seeking to introduce evidence with proper authentication or to the trial court considering an evidentiary issue afresh based on the arguments made at trial. *See State v. Bellamy*, 2022-Ohio-3698, ¶ 8-14 (holding that an expert whose testimony was excluded at trial because of untimely disclosure of his report could, on remand to the trial court for retrial, be permitted to testify if disclosure of his report complies with discovery rules). Because our remand to the trial court in accordance with the first two propositions of law makes it unnecessary to reach the third proposition of law, we vacate the judgment of the First District Court of Appeals upholding the trial court's decision to exclude the video evidence.[4]

## IV. CONCLUSION

**{¶ 20}** *Touhy* regulations do not create rights for criminal defendants, and a violation of such regulations is not generally sufficient to invoke an exclusionary remedy. *Touhy* regulations are not rules of procedural admissibility to be wielded by a criminal defendant to exclude the testimony of a current or former federal employee, who is otherwise willing and authorized to testify. In this case, a former

---

recognizance pending appeal when the prosecuting attorney files the notice of appeal and certification.

This appeal shall take precedence over all other appeals.

If an appeal from an order suppressing or excluding evidence pursuant to this division results in an affirmance of the trial court, the state shall be barred from prosecuting the defendant for the same offense or offenses except upon a showing of newly discovered evidence that the state could not, with reasonable diligence, have discovered before filing of the notice of appeal.

Crim.R. 12(K).

4. We express no opinion on the correctness of the court of appeals' analysis regarding the video-authentication issue.

federal prosecutor was apparently willing to testify and had the authorization to do so at Sheckles's trial. We therefore reverse the judgment of the First District Court of Appeals affirming the trial court's judgment, and we remand the case to the trial court for further proceedings.

**{¶ 21}** Because of this decision regarding the State's first and second propositions of law and the posture of the case, we do not address the State's third proposition of law regarding the finality of the trial court's pretrial evidentiary rulings and vacate that portion of the judgment of the court of appeals.

Judgment reversed

and cause remanded to the trial court.

_____

**STEWART, J., dissenting.**

**{¶ 22}** Whether a defendant may wield the lack of a *Touhy* letter as a "sword" in a motion in limine is certainly a valid question worthy of this court's consideration. *See* majority opinion, ¶ 3. But this is not the case to resolve that question for at least two reasons.

### Forfeiture

**{¶ 23}** First, appellant, the State of Ohio, forfeited the arguments it raises here about the trial court improperly shifting the burden on the *Touhy* issue to the State because it did not raise those arguments below. *See State v. Rogers*, 2015-Ohio-2459, ¶ 21 (stating that "forfeiture is the failure to timely assert a right or object to an error"). Nor did the State substantively argue that *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), was somehow inapplicable in this case, as the entirety of its argument on that issue in its brief to the First District Court of Appeals was as follows:

> It should also be noted that there is no definitive legal rule or
> an issue of constitutional import that would prevent [former federal

prosecutor Zachary] Kessler from testifying against [appellee, Sontez] Sheckles. The primary reason Sheckles wanted to exclude Attorney Kessler's testimony was based on a federal regulation. Attorney Kessler could have legally testified against Sheckles. Of course, Attorney Kessler, without the "Touhy" letter risked possible consequences from the [United States Department of Justice ("DOJ")] if he violated the regulations regarding a former federal DOJ employee from [sic] testifying in a state proceeding.

Thus, the State admitted that "[o]f course" Kessler "risked possible consequences from the DOJ if he violated the regulations regarding a former federal DOJ employee from [sic] testifying in a state proceeding"—i.e., he needed a *Touhy* letter to testify without risking DOJ sanctions. But rather than argue that it should be exempt from producing the letter, the State specifically asked the First District to remand the case to the trial court: "The state should be given the opportunity to either produce the 'Touhy' letter at a motion in limine and/or again at trial before it calls Attorney Kessler to testify." The State also filed an amended brief below, but it did not deviate from its original brief with respect to these issues.

**{¶ 24}** The arguments that the State raises here about burden shifting seem to be derived entirely from the dissenting appellate-court judge's opinion. The State concedes as much, stating in its reply brief that while it raised one type of procedural error to the First District (the trial court's converting Sheckles's motion in limine into a suppression motion), it was the dissenting appellate-court judge who noted another potential procedural error (the trial court's shifting the burden to the State to prove that Kessler's testimony should not be excluded). And the State raises the latter concern for the first time in its arguments here. But this court does not review arguments that have been forfeited, *see Rogers* at ¶ 21, and there is no reason to depart from that rule in this case.

**Rulings on motions in limine are preliminary**

{¶ 25} Second, like the dissenting appellate-court judge, *see* 2023-Ohio-133, ¶ 45 (1st Dist.) (Myers, J., dissenting), I am reluctant to resolve the serious question about whether a defendant may wield the lack of a *Touhy* letter as a sword in this case. Here, that question stems from the trial court's granting of a motion in limine; but rulings on motions in limine "reflect[] the court's anticipatory treatment of an evidentiary issue at trial" and "the trial court is at liberty to change its ruling on the disputed evidence in its actual context at trial," *Defiance v. Kretz*, 60 Ohio St.3d 1, 4 (1991). While some rulings on motions in limine may in effect be definitive, they are, by definition, preliminary. *See id.*; *see also Merriam-Webster Dictionary Online*, https://www.merriam-webster.com/dictionary/in%20limine (accessed Aug. 20, 2024) [https://perma.cc/B6E3-VUT8] (defining "in limine" as "a preliminary matter" and noting that the etymology of the term is Latin for "on the threshold").

{¶ 26} The preliminary nature of the trial court's ruling cuts against many of the State's arguments about the timing of the ruling and why it felt it had no choice but to appeal instead of proceeding to trial. For example, the State claims that the *Touhy* letter was on Kessler's phone, but it did not proffer that letter into evidence, despite the trial court's request to view it. The State also claimed at the outset of the proceedings that it could provide the letter to the trial court "shortly," but the State did not choose to go forward with the trial and trust that the letter would arrive in the time that it would have taken to, for example, select a jury and conduct pretrial procedures. Similarly, with respect to the video evidence of the alleged shooting in this case that was compiled from footage obtained from a bar's security cameras, the State claims in its brief that its authenticating witness was approximately 30 minutes away from the courthouse when the trial court made its ruling to grant the motion in limine. Yet instead of using that half hour to begin the trial, the State chose to immediately appeal.

**{¶ 27}** It is because of the State's choices and trial strategy that neither this court nor the appellate court was able to review the evidence at issue, since the State did not proffer the *Touhy* letter, Kessler's testimony, or the video evidence. Without more factual development and a final versus preliminary evidentiary ruling, I am reluctant to resolve the serious question raised in this case.

### Conclusion

**{¶ 28}** I agree with the majority's conclusion that "*Touhy* regulations do not create rights for criminal defendants and that a violation of such regulations is not generally a basis for a criminal defendant to request an exclusionary remedy," majority opinion at ¶ 3, and I also agree that a remand to the trial court would be appropriate since the State could and should have gone forward with the trial rather than instituting an immediate appeal. However, because I believe this appeal was improvidently accepted given the forfeiture of the State's main arguments, I would dismiss it as such.

_____

Melissa A. Powers, Hamilton County Prosecuting Attorney, and Ronald W. Springman Jr., Chief Assistant Prosecuting Attorney, for appellant.

Raymond T. Faller, Hamilton County Public Defender, and Lora Peters, Assistant Public Defender, for appellee.

Dave Yost, Attorney General, Michael J. Hendershot, Chief Deputy Solicitor General, and Zachery P. Keller, Deputy Solicitor General, urging reversal for amicus curiae, Ohio Attorney General Dave Yost.

_____